# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KEVIN E. BYRNES,                          :
                                          :
                    Plaintiff,            :        Case No.:  19-761
        v.                                :
                                          :
UNITED STATES DEPARTMENT                  :
OF JUSTICE,                               :
(Drug Enforcement Administration)         :
950 Pennsylvania Ave., N.W.               :
Washington, D.C. 20530                    :
                                          :
                                          :
                    Defendant.            :
                                          :
Serve: William P. Barr,                   :
       Attorney General                   :
       U.S. Department of Justice         :
       950 Pennsylvania Ave, N.W.         :
       Washington, D.C. 20530             :
                                          :
       Jessie K. Liu,                     :
       U.S. Attorney for the District of  :
       Columbia                           :
       555 4th Street, N.W.               :
       Washington, D.C. 20530             :
_____  :

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the

Privacy Act (the "Privacy Act"), 5 U.S.C. § 552a., *as amended*, to compel the production of

records that discuss, relate, or refer to Kevin E. Byrnes or his actions as counsel for the individuals

listed in his FOIA/Privacy Act request (the "Request") on June 28, 2018.  *See* Ex. "**A**".  Defendant

United States Department of Justice, Drug Enforcement Agency ("Defendant" or "DEA") violated

FOIA and the Privacy Act by improperly denying Plaintiff's Request on the basis that Plaintiff

failed to reasonably describe the records, by failing to timely address Plaintiff's appeal, and

unlawfully withholding the requested information. Plaintiff asks the Court to order Defendant to respond to the Request and to disclose all responsive documents.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g)(5). This Court also has jurisdiction over this action as a federal question under 28 U.S.C.A. § 1331.

2. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

3. Venue is proper under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(5), and 28 U.S.C. § 1391(e).

## PARTIES

4. **Plaintiff Kevin E. Byrnes** was and is at all times during this Complaint a resident of the District of Columbia.

5. **Defendant United States Department of Justice** is a federal agency with responsibilities of enforcing the law and defending the interests of the United States according to the law. The Drug Enforcement Administration is a component of the U.S. Department of Justice. The U.S. Department of Justice is the properly named party since it was the Drug Enforcement Agency that failed to respond to the Request. Defendant is headquartered at 950 Pennsylvania Ave, N.W., Washington, D.C. 20530. Under the Privacy Act, the party to respond is the Agency which controlled the records sought.

## STATUTORY FRAMEWORK

**A.     FOIA**

6.      FOIA promotes open government by providing every person with a right to request and receive federal agency records. 5 U.S.C. § 552(a)(3)(A).

7.      FOIA's basic purpose is for government transparency. It establishes the public's right to access all federal agency records unless such records may be withheld pursuant to one of nine, narrowly construed FOIA exemptions. 5 U.S.C. § 552(b)(1)-(9).

8.      FOIA requires requesters to "reasonably describe" the information they seek. 5 U.S.C. § 552(a)(3)(A).

9.      The "linchpin inquiry" regarding the reasonably describe requirement is whether the agency is able to determine precisely what records are being requested. *Tereshchuk v. Bureau of Prisons*, 67 F.Supp.3d 441, 454 (D.C. Cir. 2014).

10.     FOIA requests seeking documents that mention or reference a specific person or topic have been held to meet FOIA's reasonable description requirement, even if compliance might overwhelm an agency's response team. *Shapiro v. Central Intelligence Agency,* 170 F.Supp.3d 147, 155 (D.C. Cir. 2016).

11.     The number of records requested is irrelevant to the determination of whether they have been "reasonably described." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 326 (D.C. Cir. 1982).

12.     FOIA places no restrictions on the quantity of records that may be sought. *Tereshchuk*, 67 F.Supp.3d at 455. Rather, FOIA explicitly contemplates unusually large requests, affording reviewing agencies additional time "to search for ... a voluminous amount of separate and distinct records which are demanded in a single request." 5 U.S.C. § 552(a)(6)(B)(iii)(II).

13.     FOIA allows the time limits prescribed for responding to requests to be extended for "exceptional circumstances," however, such "exceptional circumstances" generally do not include a delay that results from a predictable agency workload of requests. 5 U.S.C. § 552(a)(6)(C). Thus, FOIA anticipates that requests for records may be so voluminous as to require an agency to carry an unusual workload.

14.     Courts may deny a search as unduly burdensome but demand that the agency provide a detailed explanation regarding the time and expense of a proposed search in order to assess its reasonableness. *Wolf v. CIA*, 569 F.Supp.2d 1, 9 (D.C. Cir. 2008). However, Courts will not find a search unduly burdensome on conclusory statements alone and without a showing that the burden is unusual from customarily anticipated time-consuming and voluminous FOIA requests. *Hall v. CIA*, 881 F.Supp.2d 38, 53 (D.C. Cir. 2012); *Int'l Counsel Bureau v. U.S. Dep't of Def.,* 723 F.Supp.2d 54, 60 (D.C. Cir. 2010).

15.     FOIA imposes strict deadlines on agencies to provide responsive documents to FOIA requests. 5 U.S.C. § 552(a)(6)(A).

16.     In the case of an adverse determination, the requester may appeal to the agency. *Id* § 552(a)(6)(A)(i)(III).

17.     An agency must make a determination with respect to any appeal within twenty (20) business days after receipt of the appeal. *Id* § 552(a)(6)(A)(ii).

18.     An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies. *Id* § 552(a)(6)(C)(i).  A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued holding of public records. *Id* § 552(a)(4)(B).

19.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester. *Id*. § 552(a)(4)(B).

20.     FOIA directs that the fee applicable to the processing of requests be waived if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. *Id*. § 552(a)(4)(A)(iii).

21.     Fee-waiver applications are to be liberally construed in favor of requesters. *National Sec. Counselors v. Department of Justice*, 848 F.3d 467, 473 (D.C. Cir. 2017).

22.     Measuring the contribution to public understanding turns upon "the degree to which understanding of government activities will be advanced by seeing the information and the extent of the public that the information is likely to reach." *Cause of Action v. FTC*, 799 F.3d 1108, 1116 (D.C. Cir. 2015). FOIA does not require, however, that a requester be able to reach a wide audience, just a "reasonably broad audience of persons interested in the subject." *Id.*

23.     The primary determination regarding fees is whether the records are likely to significantly contribute to public understanding, beyond that, it does "no[t] . . . matter[ ] whether the information will also (or even *primarily*) benefit the requester." *Cause of Action*, 799 F.3d at 1118 (emphasis added). "Nor does it matter whether the requester made the request for the purpose of benefiting itself." *Id.*

**B.     THE PRIVACY ACT**

24.     The Privacy Act safeguards the public from unwarranted collection, maintenance, use, and dissemination of personal information contained in agency records. *Bartel v. F.A.A.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). It does so by allowing an individual to participate in ensuring

that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately. *Id*.

25.     The Privacy Act requires an agency, upon request by an individual, to allow the individual to gain access to his record or any information pertaining to him, to review the record, and have a copy of all or any portion thereof. 5 U.S.C. § 552a(d)(1).

26.     Additionally, the Privacy Act allows the individual to request an amendment of any records pertaining to the individual. *Id*. § 552a(d)(2)(A). The rationale for disclosure is the greatest, and the limitations on withholding the most minimal, where an individual seeks their own records. *Greentree v. U.S. Customs Service*, 674 F.2d 74, 87 (D.C. Cir. 1982).

27.     Within ten (10) business days of a Privacy Act request to amend one's record, an agency must acknowledge receipt of the request and make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete or inform the individual of its refusal to amend the record and the reason for the refusal.  *Id*. § 552a(d)(2)(B).

28.     Pursuant to the Privacy Act, an agency is required to collect information "to the greatest extent practicable" from the individual when the information "may result in adverse determinations about an individual's rights, benefits, and privileges under Federal Programs." *Id*. § 552a(e)(2).

29.     The Privacy Act authorizes agencies to exempt certain filing systems from the foregoing requirements, however, the agency must show that the information is properly subject to an identified Privacy Act exemption. *Id.* 5 U.S.C. § 552a(j)-(k).

30.     In order to withhold documents from a requester's twin FOIA/Privacy Act request, an agency must demonstrate that the documents fall within some exception under each act. *Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1184 (D.C. Cir. 1987). If a FOIA exemption

covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA. *Id.*

## STATEMENT OF FACTS

31.  Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

32.  Plaintiff is an attorney who practices in the field of employment law.

33.  In May, 2015, Plaintiff, while then a solo practitioner, took on the representation of 16 senior special agents of the DEA, all of whom claimed the DEA was regularly penalizing them for their service in the Reserves of the U.S. Armed Forces.

34.  On May 16, 2015, Mr. Byrnes submitted a class appeal to the San Francisco Regional Office of the Merit System Protection Board, arguing agency wide violations of the Uniform Services Employment and Reemployment Act ("USERRA") in denial of promotions and transfers as they related to reservists and wide spread anti-military bias by Supervisory personnel who saw reserve duty as disruptive and disloyal and who treated reservists to comments that denigrated their military service. The case was filed in San Francisco since the majority of the complaining agents were stationed within that region.

35.  The class appeal was denied and 14 of the reservists then filed individual appeals.

36.  The original basis for the USERRA appeals lay with the disclosures during the cases involving Special Agent Darek J. Kitlinski ("Agent Kitlinski"), that had been filed in 2014, where he alleged violations of the Equal Employment Opportunity Act and USERRA in the denial of certain transfers by the DEA that would have allowed him to accompany his wife, a fellow DEA employee, to Washington, D.C. after she was promoted.

37.     During the pendency of the litigation in October, 2014, Agent Kitlinski, became concerned that the DEA had abused its law enforcement powers by monitoring the physical and online activities of both himself and his wife, and possibly his attorney, the Plaintiff.

38.     Agent Kitlinski physically uncovered a strategically placed DEA blackberry telephone in his personal vehicle on October 23, 2014. He remains in litigation over the issues that arose from that discovery.

39.     Agent Kitlinski filed complaints with the Inspector General and the Federal Bureau of Investigation about the telephone. These agencies turned the matter over to the DEA for investigation, despite the fact that the DEA was the agency whose misconduct was at issue.

40.     When Agent Kitlinski and his wife filed claims related to the telephone, the DEA sought to question them outside the presence of their attorney, the Plaintiff. They also sought to question Agent Kitlinski while he was on active duty, going so far as to order him to abandon his post. As to his wife, she was questioned over objection but withheld discussing her marital communications and her conversations with her counsel, the Plaintiff.

41.     The DEA fired both Agent Kitlinski and his wife for "non-cooperation." After exhausting the administrative path, Agent Kitlinski and his wife filed suit in the U.S. District Court for the Eastern District of Virginia. The case is currently pending there on remand from the Fourth Circuit, which overturned a grant of summary judgment on the claims.

42.     The Kitlinski litigation was acrimonious in the extreme. Counsel for Mr. Kitlinski deposed the Administrator of the DEA, then Michelle Leonhardt and its Deputy Administrator. During Mr. Kitlinski's deposition, the Administrator members of the Chief Counsel's Office openly questioned the motives of Kitlinski and his counsel, the Plaintiff. The attacks on Plaintiff

were so personalized, that at a break, Plaintiff admonished DEA counsel that denigration of an attorney before their client directly violated ethics rules and would not be countenanced.

43.     During the Kitlinski litigation and when representing the reservists, the majority of the reservists' claims involved actions of the senior most officials in the DEA.

44.     Special Agent Mark Coast claimed San Diego supervisors had misrepresented facts related to the treatment and discovery of Daniel Chong ("Mr. Chong"), a student who was held without bread or water for five days and apparently forgotten in his cell. Mr. Chong's suit produced a multi-million dollar settlement against the DEA, although the supervisors responsible for his mistreatment were promoted.

45.     Other Special Agents also attacked the core of the DEA's Career Board's impartiality and decision making, likening their treatment to African Americans who successfully brought suit in what is known as the Seger litigation.

46.     During the course of these cases, issues arose where the DEA seemed to obtain knowledge of activities of the reservists and their counsel in advance. This included somewhat curious timing as to Agency motions, discovery production, and other actions taken with respect to the reservists that seem to anticipate legal strategy and actions taken by the reservists.

47.     In addition, reservists who had expressed interest in pursuing claims against the DEA, were expressing hesitation, apparently based on communications with DEA personnel that hinted that hiring Plaintiff as counsel would harm them.

48.     Further, a DEA appointed counsel was placed in litigation involving Plaintiff, less than two months after joining the DEA from private practice.  One of the attorney's last acts while in private practice was to sit in on a fee dispute between a senior government employee Plaintiff had worked for some years earlier and her new counsel on a matter where Plaintiff had sustained

9

the client's employment and successfully produced grounds for appeal. The counsel was apparently aware while they were on the fee dispute panel of their offer by the DEA and that Plaintiff was litigating against the DEA. During the fee dispute, the now DEA attorney had access to private and confidential information concerning Plaintiff and the issues that surrounded the death of Plaintiff's father. The Agency refused to recuse the attorney.

49.     During the course of litigation in the Kitlinski case, Plaintiff discovered that he was mentioned in certain communications that suggested the DEA was keeping files on him.

50.     Since ex parte communications are not specifically prohibited by United States Merit Systems Protection Board ("MSPB") practice, Plaintiff also became concerned that the DEA was providing information about him or his clients to administrative law judges.

51.     Since, many of the reservists claims were picked up by the media, and Plaintiff was aware DEA officials were speaking with the media to try to undermine the strength of the reservists' claims and his efforts by denigrating him or the reservists.

52.     In addition, Plaintiff is a former Assistant U.S. Attorney who had been involved in litigation with the Department of Justice, Plaintiff was and is concerned the DEA accessed Plaintiff's own files in an improper manner.

53.     Indeed, Agent Kitlinski submitted a Privacy Act request to the MSPB and determined that the MSPB had kept off-the-record comments that maligned Agent Kitlinski personally and the merits of his cases, before evidence was heard.

54.     Believing that the DEA had conducted a campaign of surveillance, potentially improperly maintained, accessed or disclosed records on him and his interactions with his clients, and had poisoned the well with the administrative judges and the media for him and his clients, Plaintiff, on June 28, 2018, pursuant to FOIA and the Privacy Act, submitted a request via U.S.

Certified Mail to the DEA's FOIA/PA Unit. The Request, sought, in essence, ex parte communications by or between DEA's counsel and senior employees, communications obtained by the DEA, and surveillance or investigation records that "discuss, relate, or refer" to Plaintiff or his actions as a representative for various specifically named DEA personnel, who he had represented as litigants against the DEA.

55.     The Request was limited in scope from 2013 forward.

56.     Plaintiff sought these communications and records to address possible improper activity of DEA personnel that may violate federal law, rule or regulation, the Constitution of the United States, District of Columbia or Virginia law or the Code of Professional Ethics for Attorneys.

57.     On or about July 27, 2018, DEA confirmed receipt of the Request and assigned it case number 2018-00467-P ("Acknowledgement Letter"). *See* Exhibit "**B**".

58.     The Acknowledgment Letter stated that the Request did not meet the requirements of FOIA, 5 U.S.C. § 552(a)(3)(A) since it "does not reasonably describe" the record.

59.     The Acknowledgment Letter stated that in order to process the Request, Plaintiff must provide "specific information about each record sought such as the date, title or name, author and subject matter of the record."

60.     Further, the Acknowledgement Letter stated that "Under the FOIA an agency is not required to research a topic, create records or engage in far reaching search of every record system to satisfy a FOIA request."

61.     The Defendant identified Plaintiff's Request as overly burdensome because it would allegedly require a full text search of all DEA email-accounts of more that 400 servers and 15,000 email accounts.

62.     The DEA also made a determination that the Request was being made for commercial use and, as such, demanded fees for search, review, and duplication of the responsive records.

63.     On or about October 24, 2018, Plaintiff administratively appealed to the Director, Office of Information Policy, United States Department of Justice. *See* Exhibit "**C**". The Plaintiff argued that the DEA rule as to specificity would require Plaintiff to know, in advance, the nature, substance, date and drafter of the records he was seeking and thus it turned FOIA and the Privacy Act on its head and seemed to be interposed for delay and to harass and oppress the requestor and increase his costs.

64.     On or about November 15, 2018,[1] the Office of Information Policy confirmed receipt of the administrative appeal (the "Appeal") and assigned it case number DOJ-AP-2019-00900.  *See* Exhibit "**D**".

65.     As of the date of filing of this Complaint, more than four months after filing of the Appeal, Plaintiff has yet to receive a response from Defendant regarding his Appeal or given an opportunity to review the record and make corrections to the said record. Indeed, keeping with the suspicions that the Department never sought to address the request, the Plaintiff has been left with no response of any substantive kind to a request that is now nine months old.

66.     Plaintiff has a legal right to the requested records. Defendant, having failed to provide responses to the Appeal within the statutory time limits, has constructively denied the Request. 5 U.S.C. § 552(a)(6)(A). Therefore, Plaintiff is deemed to have exhausted all administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C) and may file this suit to enforce his rights under FOIA. 5 U.S.C. § 552(a)(4)(B).

---

[1] The appeal was postmarked on October 25, 2018.

67.     Defendant's failure to permit Plaintiff to view, review, and amend the record permits Plaintiff to bring suit against Defendant and enforce his rights under the Privacy Act. 5 U.S.C. § 552a(g)(1)(D).

68.     Given the history between the parties, Plaintiff must conclude that the failure to surrender the records is not inadvertent, but, is knowing, malicious, intentional, and designed to avoid producing records that would highlight the misconduct of the DEA or its officials.

69.     Contrary to the DEA's claims, the request was clear, limited in scope, and required a straightforward response. The DEA need merely have sent out a request to its components to retrieve responsive records and either withhold, redact, or produce the records. The explanation for failing to do so shows that the DEA remains intransigent for a reason and not for a lack of understanding the nature of the request or determining its ability to respond.

70.     The Defendant has not responded to the Appeal filed, it has neither requested time to review the Appeal, engaged in any dialogue to narrow or further explain the Request, or suggest a production date, but, has simply ignored responding altogether.

71.     Such failure warrants the Court not assessing fees for production and striking any exemption claims as untimely. The Court should order full production at a date certain.

## STATEMENT OF CLAIMS

### COUNT I: VIOLATION OF THE FREEDOM OF INFORMATION ACT

#### Defendant Improperly Denied Plaintiff's Request

72.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

73.     Plaintiff has a statutory right to the communications and records in his Request. 5 U.S.C. § 552(a)(6)(A)(i).

74.     Defendant violated FOIA by failing to disclose records that are responsive to Plaintiff's Request.

75.     Defendant, in denying Plaintiff's Request, contends that Plaintiff was obligated to state, "specific information about each record sought such as the date, title or name, author and subject matter of the record" and in failing to do so, did not reasonably describe the records requested.

76.     Defendant's denial is improper because it defeats the purpose of FOIA and creates a standard that does not exist under FOIA.

*77.*     FOIA's central purpose is to expose to public scrutiny official information that sheds light on an agency's performance of its statutory duties. *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 750 (U.S. 1989).

78.     Defendant's denial prohibits Plaintiff access to official information regarding the DEA and its agents' performance and adherence to statutory duties during ex parte communications with courts, administrative law judges, bar associations, the press, and Congress concerning Plaintiff or his actions.

79.     Further, contrary to Defendant's allegation that the Request does not "describe the records in enough detail" Plaintiff provides the time, scope, and category of communications and records he seeks.

80.     Defendant's denial of the Request attempts to create a heightened standard for FOIA requests that is not supported by the statutory language or framework of FOIA.

81.     FOIA requires requesters to "reasonably describe" the information they seek. 5 U.S.C. § 552(a)(3)(A).

82.     Plaintiff's Request asks for all records that "discuss, relate, or refer" to Plaintiff.

83.     Plaintiff is not seeking documents that concern or pertain to Plaintiff, rather, he has clearly stated that if there is a record, document, or communication that mentions Plaintiff or his actions as counsel for certain individuals, then those are the precise documents which Plaintiff seeks.

84.     Further particulars and information are not needed as Plaintiff has requested the entirety of the relevant documents, communications, and records.

85.     Furthermore, Defendant made no attempt to segregate its response to allow Plaintiff to view information while protecting any personal privacy interests of others or those items that raise some form of exemption or privilege. FOIA requires that "[a]ny reasonably segregable portion of a record ... be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9).

86.     Contrary to Defendant's assertion that Plaintiff's Request will require making presumptions to overcome deficiencies in the Request, compliance to Plaintiff's Request involves virtually no guesswork: A record is responsive if and only if it contains Plaintiff's name or any descriptor obviously referring to him. There is no guesswork or presumption needed for determining which records fall under the scope of Plaintiff's Request.

87.     This Court has held that requests similar to Plaintiff's Request "reasonably describe the records" pursuant to FOIA requirements. *Shapiro*, 170 F.Supp.3d 147 at 157 (FOIA requests to the CIA, NSA, DIA, and FBI requesting copies of records mentioning or referring to Nelson Mandela or his three listed aliases in all electronic and paper/manual indices, filing systems, and locations, including all of its directorates and at least thirty enumerated filing systems, indices, and locations reasonably described the records sought).

88.     Defendant further denied Plaintiff's Request on the basis that it was "not required to research a topic, create records, or engage in far reaching search of every record system."

89.     Plaintiff's Request does not demand Defendant create a record, rather Plaintiff is seeking pre-existing records.

90.     Defendant's claim that it is under no obligation to search "every record system" is in contradiction with the language of FOIA that specifically anticipates requests that will require a search in multiple records and, thus, result in voluminous records. 5 U.S.C. § 552(a)(6)(B)(i)-(iii).

91.     FOIA's reasonable description requirement does not doom requests even if compliance might overwhelm an agency's response team. *Shapiro,* 170 F.Supp.3d 147 at 155; *See also Yeager*, 678 F.2d at 326; (finding that a request to search over a million records reasonably described the records sought, since the agency "knew 'precisely' which of its records had been requested and the nature of the information sought from those records").

92.     Defendant has failed to provide more than a conclusory statement why conducting a search on 400 servers and 15,000 email accounts is unusual from customarily time-consuming and voluminous FOIA requests.

93.     Defendant has provided no adequate basis for denying the Request and for this reason is in violation for failing to provide the record, communications, and documents related to Plaintiff's Request within the statutory deadline FOIA mandates. 5 U.S.C. § 552(a)(6)(A)(i).

### COUNT II: VIOLATION OF THE FREEDOM OF INFORMATION ACT, DEPARTMENT OF JUSTICE FEDERAL REGULATIONS, AND OFFICE OF MANAGEMENT AND BUDGET REGULATIONS

#### Defendant Improperly Assessed Fees to Plaintiff's FOIA Request

94.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

95. Defendant's Acknowledgment Letter states that Plaintiff's Request is for a commercial use and, thus, Defendant is required to assess fees for search, review, and duplication of the responsive records.

96. Defendant's characterization of Plaintiff's Request is wrong.

97. As stated in Plaintiff's Request, the purpose of the Request was to "address possible improper activity by Defendant and its agents personnel, that may violate federal law, rule or regulation, the Constitution of the United States, District of Columbia or Virginia law or the Code of Professional Ethics for Attorneys."

98. Disclosure of this information will contribute significantly to the public's understanding of how Defendant acts in the course of conducting its agency activities during the defense of claims brought by current or former employees. Additionally, it will reveal the actions Defendant takes to secure successful outcomes of these claims by sidestepping important constitutional protections for claimants and how the administrative system functions in reality compared to how the system was intended to function.

99. Public interest in the material Plaintiff seeks is substantial given the number of current and former employees with existing or potential claims that are employed or contracted with Defendant or agencies similar to Defendant. Disclosure will reveal what is yet unknown—how the government handles current and former DEA employee claims internally.

100. Defendant's attempt to assess fees against Plaintiff for material that clearly contributes to the public understanding of the government's activities and is in the public's interest is in violation of FOIA, Department of Justice Regulation 28 C.F.R. § 16.10(b)(1), and Office of Management and Budget Regulation 5 C.F.R. §1303.50(d).

## COUNT III: VIOLATION OF THE FREEDOM OF INFORMATION ACT

<u>Defendant Missed FOIA's Mandatory Determination Deadline for Plaintiff's FOIA Request</u>

101.    Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

102.    Plaintiff has a statutory right to a lawful final determination from Defendant within the statutory deadline that FOIA mandates. 5 U.S.C. § 552(a)(6)(A)(ii).

103.    Defendant failed to respond to the Appeal within the statutorily mandated timeframe.

104.    Defendant has violated the Plaintiff's rights under FOIA, including but not limited to 5 U.S.C. §§ 552(a)(6)(A)(ii) by failing to provide a lawful determination on his FOIA requests.

## COUNT IV: VIOLATION OF THE PRIVACY ACT

<u>Defendant Violated the Privacy Act's Mandatory Requirement to Provide Plaintiff Access to His Record and Information Pertaining to Him</u>

105.    Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

106.    Plaintiff has a statutory right to gain access to his record and any information pertaining to him upon his Request. 5 U.S.C. § 552a(d)(1).

107.    Defendant's Acknowledgment Letter fails to identify a recognized justification or exemption pursuant to the Privacy Act that would permit the denial of Plaintiff's Request.

108.    Defendant has violated Plaintiff's rights under the Privacy Act by failing to respond to the Appeal and allowing Plaintiff access to the record. 5 U.S.C. § 552a(d)(1).

## COUNT V: VIOLATION OF THE PRIVACY ACT

<u>Defendant Violated the Privacy Act's Mandatory Requirement to Permit Plaintiff to Amend His Record</u>

109.    Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

110.    Within ten (10) business days of a Privacy Act request to amend the record pertaining to an individual, an agency must acknowledge receipt of the request and make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete or inform the individual of its refusal to amend the record and the reason for the refusal. 5 U.S.C. § 552a(d)(2)(A)-(B).

111.    Plaintiff has a statutory right to a lawful final determination from Defendant within the statutory deadline that the Privacy Act mandates. *Id*.

112.    Defendant failed to respond to the Appeal within the statutorily mandated timeframe.

113.    Defendant has violated Plaintiff's rights under the Privacy Act by failing to provide a lawful determination on his Appeal. *Id*.

## CONCLUSION

114.    Defendant knew or should have known that its actions were improper, unlawful and/or in violation of FOIA and the Privacy Act.

115.    Defendant acted intentionally or willfully in violation of Plaintiff's privacy rights. Defendant is ignoring its obligations under FOIA and the Privacy Act, to hide its own misconduct and to annoy and oppress the requestor who it dislikes for the advocacy work he has taken against them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin E. Byrnes requests that the Court award him the following relief:

1.    Declare that Defendant violated the Privacy Act and Freedom of Information Act;

2.      Order Defendant to immediately disclose the requested records in their entireties to

Plaintiff;

3.      Award Plaintiff any actual damages under 5 U.S.C. § 552a(g)(4)(A), the exact

amount of which is to be determined at trial but is not less than $1,000;

4.      Invoke its equitable powers to expunge all records or information maintained by

Defendant that is inaccurate and/or derogatory to Plaintiff;

5.      Award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §

552(a)(4)(E)(i); 5 U.S.C. §§ 552a(g)(3)(B) and/or (4)(B), 552 (a)(4)(E) and/or 28

U.S.C. § 2412(d);

6.      Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

7.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

_/s/_ _____
Thomas M. Craig, Esq. 494503
FH+H, PLLC
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
T: 703.590.1234
F: 703.590.0366
tcraig@fhhfirm.com
*Counsel for Plaintiff*