UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

KEVIN E. BYRNES,                        )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )       Case No. 19-cv-0761 (APM)
                                        )
UNITED STATES DEPARTMENT                )
OF JUSTICE,                             )
                                        )
        Defendant.                      )
_____ )

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

Plaintiff Kevin Byrnes, a lawyer, brings this Freedom of Information Act ("FOIA") action against Defendant U.S. Department of Justice seeking to compel the Department to conduct a more thorough search of records held by its component Drug Enforcement Administration ("DEA") and to release information withheld pursuant to FOIA Exemption 6. Byrnes's request stems from his experience representing a number of DEA employees, particularly in a class action of sixteen DEA special agents who claimed the agency penalized them for their service in the U.S. Armed Forces reserves. After negotiations between Byrnes and the Department on the scope of Byrnes's requests faltered, the parties cross-moved for summary judgment.

For the reasons that follow, the court grants in part and denies in part the Department of Justice's Motion for Summary Judgment and grants in part and denies in part Byrnes's Cross-Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background

Byrnes is a privately practicing attorney.  Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 32–33.  In 2015, he was retained by sixteen DEA special agents who claimed that the agency was violating the Uniform Services Employment and Reemployment Rights Act ("USERRA") by penalizing them for serving in the U.S. Armed Forces reserves.  *Id.* ¶¶ 33–34.  Byrnes represented them before the Merit System Protection Board's San Francisco Regional Office, which ultimately denied their claims.  *Id.* ¶¶ 34–35.

Byrnes describes his relationship with opposing counsel for the DEA as "acrimonious in the extreme."  *Id.* ¶ 42.  Counsel purportedly clashed during depositions of high-level DEA officials, and Byrnes claims that he ultimately suspected that DEA "obtain[ed] knowledge of activities of the reservists and their counsel in advance."  *Id.* ¶ 46.  He also believes that DEA may have "private and confidential information concerning [him] and the issues that surrounded the death of [his] father" because a DEA attorney sat on a fee dispute panel involving Byrnes prior to starting a job as counsel for DEA.  *Id.* ¶ 48.  Byrnes also speculates that DEA personnel dissuaded other U.S. Armed Forces reservists at DEA from hiring him because "reservists who had expressed interest in pursuing claims against the DEA[] were expressing hesitation" after communicating with DEA personnel.  *Id.* ¶ 47.

Byrnes submitted a five-part FOIA and Privacy Act request to DEA related to these suspicions on June 28, 2018.  *See* Def.'s Mot. for Summ. J., ECF No. 21 [hereinafter Def.'s Mot.], Def.'s Stmt. of Undisputed Material Facts, ECF No. 21-2 [hereinafter Def.'s Facts], ¶ 1; *see also* Def.'s Mot., Ex. A, ECF No. 21-4 [hereinafter Pl.'s Req.].  The request is detailed, so the court merely summarizes it here.  First, Byrnes requested all communications between DEA and a list

of third parties[1] "that discuss, relate or refer to Kevin E. Byrnes or his actions as counsel for the individuals that are listed in paragraph 6" of the request between December 1, 2013, and the date of the request.  Pl.'s Req. at 1–2.  Paragraph 6 identified sixteen "USERRA Complainants" and two "[o]ther DEA employees."  *Id.* at 3–4.  Second, Byrnes sought all communications obtained by DEA concerning Byrnes, "including specifically any records of information provided by, or communications made to, DEA attorney Sandra Stevens regarding her role as an arbitrator for the DC Bar's Fee Dispute Resolution Panel" for the period between December 1, 2013, and the date of the request.  *Id.* at 2–3.  Third, he requested "[a]ll records reflecting any surveillance or investigation of Kevin E. Byrnes or any client or agent of Kevin E. Byrnes, for the period December 1, 2013[,] to the present."  *Id.* at 3.  Fourth, Byrnes asked for any communications by DEA employees or agents that sought "to monitor or deter any employee of the Agency from selecting or maintaining Mr. Byrnes as a legal representative or which in any way [sought] to disparage Mr. Byrnes to any third party."  *Id.*  Fifth and finally, Byrnes requested all communications by DEA that claimed that "Byrnes violated any professional code of legal ethics" or "that mention[ed] the conduct or motives of Mr. Byrnes."  *Id.*

The Department of Justice ("the Department") responded to Byrnes's request on July 27, 2018.  Def.'s Mot., Ex. B, ECF No. 21-5.  The Department informed Byrnes that his request did "not reasonably describe records."  *Id.* at 1.  It explained that the Department could not search

---

[1] Specifically, Byrnes requested DEA communications with:  administrative law judges of the Merit Systems Protection Board and their agents; board members of the Merit Systems Protection Board and their agents; any federal judge for any federal court; any administrative law judge for the Equal Employment Opportunity Commission or their agent; the Office of Special Counsel; any elected official, investigator, employee, or agent of the U.S. Congress; veteran or servicemember organizations; the media; any person representing Daniel Chong; any official or agent of the Department of Justice's Office of the Inspector General; any official or agent of the U.S. Attorney's Office or Executive Office for U.S. Attorneys; officers and agents of the U.S. Coast Guard; officers and agents of the Federal Bureau of Investigation; officers and agents of the Department of the Treasury; any licensure authority for attorneys; any state, federal, or local law enforcement authority; and any private person or entity.  *See* Pl.'s Req. at 1–2.

communications without additional information related to the "specific date, title or name, author, recipient, subject matter of the record, and the particular office(s) that may maintain the records." *Id.* at 2. The Department also explained that, without additional information regarding who sent or received the communications, DEA would need to search "more than 400 servers and 15,000 email accounts" and then "manually read" each communication to determine whether the material was responsive. *Id.* DEA estimated that this "search would encompass a period of months and cause an interruption in normal DEA operations." *Id.* This, the Department contended, "would be over burdensome." *Id.* The Department told Byrnes that "no further action [would] be initiated on this request until [it was] in receipt of a narrowed scope, alternative time frame, sender and recipient names for emails, title or name, author, recipient, subject matter of the record and the type of record." *Id.* at 3.

Byrnes declined to narrow his request and instead appealed the Department's decision to the Office of Information Policy on October 24, 2018. Def.'s Facts ¶ 9. The Office of Information Policy acknowledged Byrnes's appeal on November 15, 2018, but had not issued a decision when Byrnes filed the instant lawsuit on March 19, 2019. *See id.* ¶¶ 10–12.

Byrnes's lawsuit appears to have spurred the Department to action. By letter dated May 17, 2019, the Department of Justice informed Byrnes that it had run searches for records responsive to some of his requests. Def.'s Mot., Ex. E, ECF No. 21-8 [hereinafter May 17 Letter], at 1. Specifically, the Department treated the portion of Plaintiff's third demand that asked for all records reflecting any surveillance or investigation of him as a Privacy Act request. *Id.* The Department's component agency DEA searched its "Investigative Reporting and Filing System," which "contains all administrative, general, and investigative files compiled by DEA for law enforcement purposes," using Byrnes's name as a search term, but the search returned no

4

responsive records.  *Id.*  DEA did not conduct a search for the portion of Byrnes's third request that sought records reflecting surveillance or investigation "of any client or agent" on the ground that "DEA would have to know every client or agent of Mr. Byrnes, which it ha[d] no way of knowing."  Def.'s Mot., Decl. of Angela D. Hertel, ECF No. 21-3 [hereinafter First Hertel Decl.], ¶ 23 (alteration omitted).

DEA also told Byrnes that it was running searches for records requested in paragraphs 1(a) through 1(n) and 2 of his request.[2]  May 17 Letter at 1.  DEA forwarded the request to its "Office of Congressional and Public Affairs (CP) and . . . Office of Chief Counsel (CC), which are the DEA offices that [the agency determined] would be best suited, or most likely to maintain the records that are responsive to this request."  *Id.*  As to the remainder of Byrnes's requests, DEA reiterated that they were "so broad that [they] would require a search of records maintained by any of the 500 offices and/or decision units that currently comprise DEA."  *Id.*  DEA maintained its position that the requested search would take months and would interrupt normal operations.  *Id.*

DEA's searches yielded 967 responsive pages.  Def.'s Facts ¶ 20.  Of that return, DEA released to Byrnes 623 pages in full or with partial redactions and withheld 344 pages in full.  *Id.* DEA then completed a further review and, on October 26, 2020, released information that it had previously withheld under Exemption 2.  *Id.* ¶ 22.  DEA maintained many of its withholdings under Exemptions 5 and 6.  *Id.*

## B.    Procedural Background

Byrnes filed the Complaint in this matter on March 19, 2019.  *See* Compl.  The Department of Justice answered the Complaint on July 8, 2019.  *See* Def.'s Answer, ECF No. 7.  After the

---

[2] The only search that DEA did not undertake as to the first request—set forth in the last sub-paragraph, 1(o)—was of communications referring or relating to Byrnes between DEA and "a private person or entity," Pl.'s Req. at 3.  Byrnes makes no specific challenge as to this refusal to search.

Department completed the aforementioned productions, the parties cross-moved for summary judgment.  *See* Def.'s Mot; Pl.'s Cross-Mot. for Summ. J., ECF No. 27 [hereinafter Pl.'s Mot.]. With its motion for summary judgment, the Department produced a *Vaughn* index spanning almost 100 pages.  *See* Def.'s Mot., Vaughn Index, ECF No. 21-10.  It subsequently filed an amended *Vaughn* index with its reply brief that corrected certain errors identified in Byrnes's briefing. Def.'s Reply in Supp. of Its Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 31 [hereinafter Def.'s Reply], Vaughn Index, ECF No. 31-2.

## III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA action, "the agency bears the burden of showing that there is no genuine issue of material fact," and it must demonstrate "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents."  *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983).  The agency should support its motion for summary judgment with "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Such an affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine

6

issue with respect to whether the agency has improperly withheld extant agency records." *Wright v. U.S. Dep't of Just.*, 121 F. Supp. 3d 171, 177 (D.D.C. 2015) (internal quotation marks omitted).

## IV.   DISCUSSION

Byrnes has raised a panoply of challenges to DEA's search for responsive records.  The court first addresses his challenges to DEA's search in response to paragraphs 1 and 2 of his request before turning to his challenges to DEA's partial search in response to paragraph 3.  The court next considers the parties' arguments regarding DEA's refusal to search for records responsive to paragraphs 4 and 5, and then considers Byrnes's objections to DEA's withholdings under Exemption 6.

### A.      Requests in Paragraphs 1 and 2

Recall that in paragraphs 1 and 2 of Byrnes's request, he sought (1) all communications between DEA and certain third parties that discussed Byrnes or his actions as counsel for specific individuals and (2) all communications obtained by DEA that concern Byrnes—specifically, any communications from DEA attorney Sandra Stevens, who had previously served as an arbitrator on the Washington, D.C. Bar's Fee Dispute Resolution Panel.  Pl.'s Req. at 1–3.  In response, DEA searched the records of its Office of Chief Counsel ("CC") with respect to requests 1(a)–1(e), 1(i)–1(n), and 2, and the records of its Office of Congressional and Public Affairs ("CP") with respect to requests 1(f)–1(h).  *See* First Hertel Decl. ¶¶ 20–21; Def.'s Reply, Suppl. Decl. of Angela D. Hertel, ECF No. 31-1 [hereinafter Second Hertel Decl.], ¶ 9 (noting DEA searched CC's records for requests 1(i), 1(j), and 1(m)).  Within CC, current "attorneys assigned to the matters listed in paragraph 6 conducted manual searches of their records," including emails.  First Hertel Decl. ¶ 22.  For attorneys involved in the matters listed in paragraph 6 who were no longer employed by CC, DEA conducted an "automated search" that queried "Byrnes's name against any non-DEA

email with a domain address ending in '.gov' for the relevant time period." *Id.* As DEA clarified

on reply, for all records responsive to paragraph 1, CC searched "the relevant legal files associated

with each matter" identified in paragraph 6 *and* "conducted an additional search solely for email

communications" of the CC attorneys assigned to the matters listed in paragraph 6. Second Hertel

Decl. ¶ 7.

> 1.    *Selection of Records to Search*

Byrnes first argues that the agency improperly cabined its search for records responsive

to paragraphs 1 and 2 to only two of its offices: CC and CP. Pl.'s Mot., Pl.'s Mem. of P. & A. in

Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Summ. J., ECF No. 27-1

[hereinafter Pl.'s Br.], at 6–7. He argues that DEA misconstrued his request as searching for only

"*official* communications," when his request sought *all* communications, and DEA should have

been required to search all employees' files. *See id.*

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy

its FOIA request, the factual question it raises is whether the search was reasonably calculated to

discover the requested documents, not whether it actually uncovered every document extant."

*SafeCard Servs.*, 926 F.2d at 1201. "There is no requirement that an agency search every record

system," *Oglesby*, 920 F.2d at 68, and an agency's search cannot be proven unreasonable based

on a plaintiff's "[m]ere speculation that as yet uncovered documents may exist," *SafeCard Servs.*,

926 F.2d at 1201.

Byrnes has not offered anything other than his own speculation that records exist in other

divisions of DEA to support his argument that DEA's search was unreasonable. DEA thoroughly

explained why it identified CC and CP as the offices most likely to have responsive records. It

explained that "[b]ecause of Mr. Byrnes's legal representation of DEA employees in legal matters

brought against the DEA, CC was the DEA office most likely to have all the records responsive to the request."  Second Hertel Decl. ¶ 6.  Moreover, CC was the "primary, if not only, DEA office communicating with" most of the entities identified in paragraph 1, and regardless of the recipient of the communication, CC would "have been responsible for communications if [a] matter involved outside legal counsel, such as Mr. Byrnes."  *Id.*  DEA further identified CP as "the DEA office responsible for communicating with Congress, the media, and any external entity related to community outreach"—the entities from which Byrnes requested communications in paragraphs 1(f)–1(h) (which sought communications with Congress, veteran or service member organizations, and the media).  First Hertel Decl. ¶ 20.  Byrnes suggests that there may be some unofficial communications that were not captured by the agency's search, but he has not identified any reason beyond his mere suspicions that such unofficial communications exist.  Nor has he identified a particular division that DEA clearly should have searched in response to his requests.  He therefore has not satisfied his burden to establish that "as yet uncovered documents . . . exist."  *SafeCard Servs.*, 926 F.2d at 1201.

### 2.    Searches for Requests 1(i), 1(j), and 1(m)

Byrnes also challenges DEA's search on the grounds that a search of CC's legal files would not have produced records related to his requests in paragraphs 1(i), 1(j), and 1(m).  Pl.'s Mem. of P. & A. in Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 35 [hereinafter Pl.'s Reply], at 8–9.  Byrnes argues that "the requests in subparagraphs (i), (j), and (m) are wholly unrelated to any of the legal matters in paragraph 6, thus there is no reason to expect responsive documents to be in the 'relevant legal files' for such legal matters."  *Id.* at 9.  Beyond pointing out that CC was the office most likely to have communications responsive to the requests in paragraphs 1(i), 1(j) and 1(m), the Department of Justice does not explain why documents responsive to these

specific requests would have been located in CC's legal files.  *See* Def.'s Reply at 2–3.  Hertel, however, explains that CC's searches for responsive files were not limited to the legal records for the matters listed in paragraph 6, and "[t]he CC attorneys involved in this matter *also* conducted [an] additional search of their email communications for any responsive records."  Second Hertel Decl. ¶ 7 (emphasis added).  Thus, she claims, "when CC searched its records for any communication with the external entities specified in paragraph 1 that discussed, related, or referred to Mr. Byrnes, the search included a search for records responsive to subparagraphs 1(i), 1(j), and 1(m)."  *Id*. ¶ 9.  This does not settle the matter, though, because Byrnes contends that even if CC searched for records beyond the legal files for the matters listed in paragraph 6, there is no reason to believe that the same attorneys who handled the matters identified in paragraph 6 would be the attorneys with responsive records for the requests in paragraphs 1(i), 1(j), and 1(m).  Pl.'s Reply at 9.

Byrnes has not explained why his requests in paragraphs 1(i), 1(j), and 1(m) are not related to the matters listed in paragraph 6, leaving it to the court to look to the text of the requests and decipher for itself whether they request documents that are in fact unrelated to the matters in paragraph 6.  The request in paragraph 1(i) plainly relates to a matter not listed in paragraph 6—it requests communications related to the representation of Daniel Chong, who is not listed in paragraph 6.  *See* Pl.'s Req. at 1–4.  DEA's search therefore would not have captured the records sought in paragraph 1(i), and its search was not sufficient as to that request.  As to paragraphs 1(j) and 1(m), however, it is not plain from the face of the requests—which seek communications with the Department of Justice's Office of the Inspector General, U.S. Attorney's Office, and Executive Office for U.S. Attorneys, on the one hand, and with licensure authorities for attorneys, on the other—that they are not related to the matters listed in paragraph 6.  *See id.* at 2.  Byrnes did not

provide DEA with any further information on requests 1(j) and 1(m) that would clearly indicate they were not related to the matters identified in paragraph 6. Each of those offices interfaces with attorneys, and given that all of Byrnes's requests in paragraph 1 explicitly reference his "actions as counsel for the individuals that are listed in paragraph 6," *id.*, it was reasonable for DEA to conclude that the legal files for the matters listed in paragraph 6 and the files of attorneys who litigated those matters were the most likely to contain relevant documents. Without providing a sufficient basis to determine that the requests in paragraphs 1(j) and 1(m) exceed the scope of the matters listed in paragraph 6, Byrnes has not established that DEA's search as to those requests was unreasonable.

3.   *Search for Requests 1(g), 1(h), 1(i), and 1(m)*

Byrnes also challenges the adequacy of DEA's search in response to his requests in paragraphs 1(g) (communications with veteran or servicemember organizations); 1(h) (with the media); 1(i) (with representatives of Daniel Chong); and 1(m) (with attorney licensure authorities). Pl.'s Reply at 7–8. Specifically, he argues that the agency failed to conduct a reasonable search for the records requested in these subparagraphs because it searched the records of former CC employees only for their communications with "non-DEA email" addresses that had a domain ending in ".gov." *Id.* at 7. Byrnes argues that the communications sought in paragraphs 1(g), 1(h), 1(i), and 1(m) would not have been with government entities and thus would not have been located by searching for communications from email domains that ended in ".gov." *See id.* at 7–8. The Department does not explain its decision to limit its email searches of former employees' records to email addresses ending in ".gov." *See* Def.'s Reply at 4.

It is clear from the text of Byrnes's requests in paragraphs 1(g), 1(h), 1(i), and 1(m) that the agency's search was not "reasonably calculated to uncover all relevant documents," *Kowalczyk*

11

*v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *see also Judicial Watch, Inc. v. U.S. Dep't of Just.*, 373 F. Supp. 3d 120, 126 (D.D.C. 2019) (requiring a broader search for email communications where other locations were "reasonably likely to contain responsive records"). None of the requests in these paragraphs seek communications from government entities. Rather, they seek communications from nonprofits, the media, outside attorneys, and state bar authorities. *See* Pl.'s Req. at 2. It therefore makes little sense for the agency to limit the communications searched to those that end in ".gov," the domain for entities of the federal government. Accordingly, the Department of Justice's search of former CC employees' records was not reasonable as to the requests in paragraphs 1(g), 1(h), 1(i), and 1(m), and Byrnes is entitled to summary judgment on this issue.

> ### 4.   Limiting Search to Certain Legal Matters

Byrnes's next objection is twofold. First, he argues that DEA improperly limited its search to the legal files for matters identified in paragraph 6 of his request, and thus "failed to search the network files of all CC attorneys."[3] *See* Pl.'s Reply at 3–6. Second, he argues that DEA unreasonably limited its search of attorney Sandra Stevens's communications to her communications related to the matters identified in paragraph 6, despite the fact that his request on its face sought records that were not related to those matters. *See id.* at 10–12.

Byrnes raises both of these arguments for the first time in his reply brief. "[D]istrict courts . . . generally deem arguments made only in reply briefs to be forfeited." *MBI Grp., Inc. v. Credit*

---

[3] In his opening brief, Byrnes argued that Hertel's original declaration failed to articulate "how [DEA] searched for . . . 'other records'" beyond email. Pl.'s Br. at 9–10. In Hertel's second declaration she explained that DEA "search[ed] the relevant legal files," which "include electronic and hardcopy records associated with a matter, including email communications, Word documents, and pdf documents." Second Hertel Decl. ¶ 7. She further explained that CC attorneys conducted a "manual search" of the legal files for responsive records. *Id.* The court is satisfied that the supplemental Hertel declaration answers Byrnes's questions with respect to the "other records" referenced in the first Hertel declaration.

*Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010) (internal quotation marks omitted). Reply briefs are not intended to "provide the moving party with a new opportunity to present yet another issue for the court's consideration," *id.* (internal quotation marks omitted), and a court typically will not consider arguments raised for the first time in reply absent good cause.

As to Byrnes's argument that DEA improperly limited its searches to the legal files for matters identified in paragraph 6, no good cause exists to consider the argument. Byrnes was on notice from the Department's opening brief that the Department interpreted "[p]aragraph 1 of Plaintiff's request []as limited in scope to the current and former DEA employees listed in paragraph 6," Def.'s Br. at 8, and thus only "CC attorneys assigned to the matters listed in paragraph 6 conducted manual searches of their records," Hertel Decl. ¶ 22. He therefore forfeited his argument that the Department's limitation of its searches to CC attorneys who worked on the matters identified in paragraph 6 was not reasonable by failing to raise it in his opening brief.

Even if the court were to consider this argument, however, Byrnes has not presented sufficient evidence that DEA should have searched for records unrelated to his representation in the matters listed in paragraph 6. *See SafeCard Servs.*, 926 F.2d at 1201. Paragraph 1 ties his request to the matters related to paragraph 6 by seeking communications "that discuss, relate or refer to Kevin E. Byrnes or his actions as counsel for the individuals that are listed in paragraph 6." Pl.'s Req. at 2. It was reasonable for the agency to conclude that the files most likely to discuss, relate to, or refer to Byrnes would be found in the legal files of matters that he litigated. Moreover, DEA did not just search the legal files of the CC attorneys involved in those matters; "CC conducted an additional search solely for email communications to ensure it had located all responsive records for the relevant time period." Second Hertel Decl. ¶ 7. The agency thus reasonably concluded that the attorneys associated with the matters Byrnes litigated would be the

most likely to have responsive documents and thoroughly searched those attorneys' files. "Agencies need not turn over every stone," so long as they "conduct a 'good faith, reasonable search of those systems of records likely to possess requested records.'" *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 220 F. Supp. 3d 40, 45 (D.D.C. 2016) (quoting *Cunningham v. U.S. Dep't of Just.*, 40 F. Supp. 3d 71, 83–84 (D.D.C. 2014)). Here, the agency's search of the files of CC attorneys associated with matters that Byrnes litigated was sufficiently thorough and nothing more was required.

The court concludes otherwise, however, as to the Department's limitation of its searches in response to the requests in paragraph 2. The Department of Justice did not make clear until it filed Hertel's supplemental declaration with its reply brief that it had not searched all of attorney Stevens's communications. *See* Second Hertel Decl. ¶ 7. Thus, Byrnes did not have the opportunity to respond to DEA's decision to "search for responsive records to paragraph 2 by . . . searching its legal files," *id.*, until his reply brief. The court can appropriately reach the merits of Byrnes's claim regarding paragraph 2.

On the merits, Byrnes's request in paragraph 2 plainly required DEA to search all of Stevens's email communications. The request in paragraph 2, unlike the request in paragraph 1, does not in any way refer to the matters identified in paragraph 6. *See* Pl.'s Req. at 2–3. In fact, the request explicitly goes beyond Byrnes's role in matters that he litigated on behalf of DEA to seek records from "Stevens regarding her role as an arbitrator for the DC Bar's Fee Dispute Resolution Panel." *Id.* at 3. DEA has not provided any reason that records responsive to Byrnes's request for files related to a fee dispute would be located in CC's legal files. And given that Byrnes sought "[a]ll records of communications . . . provided by, or communications made to, DEA

14

attorney Sandra Stevens," *id.*, DEA had an obligation to search Stevens's files beyond the legal files for the matters identified in paragraph 6.

It is not clear, however, from the Hertel declarations that DEA searched all of Stevens's communications.  Hertel explains that, in addition to searching legal files, CC attorneys "also conducted [an] additional search of their email communications for any responsive records." Second Hertel Decl. ¶ 7.  This suggests that CC attorneys did search all of their email communications, but the Hertel declarations do not specify who the CC custodians were.  The court cannot confirm based on Hertel's declarations that Stevens's records were searched at all. The Hertel declarations are therefore not "reasonably detailed" because they do not "allow the district court to determine if the search was adequate."  *Oglesby*, 920 F.2d at 68.  The court thus cannot grant the Department of Justice summary judgment on this issue.  To cure this defect, the Department of Justice is ordered to provide a more detailed supplemental declaration that identifies whether Stevens was one of the custodians whose records were searched.  If her custodial file was not searched, the Department shall do so.

### 5.   *Custodians*

Byrnes argues more broadly that the Department of Justice is not entitled to summary judgment as to his requests in paragraphs 1 and 2 because the Hertel declarations do not "name any of the custodians—the former or current CC attorneys—whose records were searched." Pl.'s Br. at 9.  Simply put, an agency declaration that does not "identify[] the employees chosen to conduct the search . . . fails to pass muster." *Ctr. for Bio. Diversity v. Bureau of Land Mgmt.*, No. 17-cv-1208 (BAH), 2021 WL 918204, at *9 (D.D.C. Mar. 9, 2021); *see also Flete-Garcia v. U.S. Marshals Serv.*, No. 18-cv-2442 (RDM), 2020 WL 1695127, at *4 (D.D.C. Apr. 7, 2020) (finding declaration was inadequate where it did not provide "any detail regarding search terms or

methodologies, possible custodians, or whether additional databases or files might contain the requested records"). Accordingly, the court orders the Department of Justice to file a supplemental declaration disclosing the custodians whose records were searched.

6.    *Search Methods*

Byrnes's final challenge to the agency's search for records responsive to paragraphs 1 and 2 is that DEA improperly employed different search methods for current CC employees and former CC employees. Pl.'s Br. at 10; *see also* Pl.'s Reply at 8. Specifically, he objects that the agency permitted current CC attorneys to conduct their "own manual search of their own emails, employing unstated search terms and unstated search methods." Pl.'s Br. at 10. In contrast, the agency performed "an automated search" of the records of former CC attorneys. *See id.* The Department of Justice explains that DEA had to rely on CC attorneys to conduct a manual search "because there was no automated mechanism by which to search its legal files." Def.'s Reply at 4.

As to DEA's search methods, Byrnes has given the court no reason to doubt the agency's statement that it could not automatically search its legal files, and the agency's declaration is presumed to be in good faith. *SafeCard Servs.*, 926 F.2d at 1200. The court therefore finds no fault in the agency's decision to conduct manual searches of the legal files of current CC employees while conducting automated searches for former CC employees.

But Byrnes's argument raises another concern that precludes the court from granting the Department of Justice summary judgment on this issue: the Hertel declarations do not identify the search terms that CC attorneys employed in manually reviewing legal files and that DEA employed in automatically searching former CC attorneys' files. For the court to grant the agency summary judgment, it must produce "[a] reasonably detailed affidavit[] *setting forth the search terms*" that it used. *Oglesby*, 920 F.2d at 68 (emphasis added). Without disclosing the terms that CC attorneys

and DEA searched for, Byrnes does not have a complete "opportunity to challenge the adequacy of the search," and this court cannot "determine if the search was adequate." *Id.* Accordingly, the Department of Justice is ordered to produce a supplemental affidavit that provides the terms that current CC attorneys looked for in determining whether a record was responsive and the search terms DEA used in its automated search of former CC attorneys' records.[4]

### B.     Requests in Paragraph 3

Paragraph 3 of Byrnes's request sought "[a]ll records reflecting any surveillance or investigation of Kevin E. Byrnes or any client or agent of Kevin E. Byrnes, for the period December 1, 2013 to the present." Pl.'s Req. at 3  DEA responded to the first part of this request— records relating to Byrnes himself—by searching its Investigative Reporting and Filing System ("IRFS"), which Hertel explains "accounts for all DEA law enforcement intelligence and investigative records that are maintained on an individual." First Hertel Decl. ¶ 15. To search the IRFS, DEA queries an individual's name in the Narcotics and Dangerous Drugs Information System ("NADDIS"). *Id.* ¶ 16. A search of "Kevin Byrnes" returned no records in NADDIS. *Id.* ¶ 17. According to Hertel, "[i]f DEA had surveilled or investigated Mr. Byrnes, a NADDIS search would have produced a file number, a report number, or some other Privacy Act identifier." Second Hertel Decl. ¶ 10. DEA did not, however, conduct a search for any of Byrnes's clients because, it contends, it lacked sufficient information to identify his clients. *Id.* ¶ 11.

Byrnes raises two challenges to DEA's search in response to paragraph 3. First, he argues that DEA's search was inadequate because the NADDIS database "is comprised largely of drug criminals" and cannot reasonably be expected to have information related to surveillance of an

---

[4] Because the court orders DEA to disclose its search terms, the court need not reach Byrnes's argument that the Hertel declarations are insufficient because they "fail[] to specify exactly how the Agency searched on Plaintiff's name." Pl.'s Br. at 9.

attorney like Byrnes.  *See* Pl.'s Br. at 18–20.  Second, he argues that, even if DEA did not have the names of all of his clients, it was required to search its records for surveillance of the clients whose names DEA knew or discovered in the course of its searches.[5]  *See id.* at 22–24.  The court takes each of these arguments in turn.

### 1. Surveillance Records Pertaining to Byrnes

Byrnes's challenge that DEA's search of IRFS via NADDIS was not reasonably calculated to lead to relevant records fails.  The agency has clearly stated that "[i]f [the agency] had surveilled or investigated Mr. Byrnes, the NADDIS search would have produced a file number, a report number, or some other Privacy Act identifier."  Second Hertel Decl. ¶ 10.  The onus is therefore on Byrnes to provide "specific evidence" that records exist elsewhere.  *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 31 (D.D.C. 2019).  Put differently, he must "provide[] a reasonable basis for concluding" that additional "systems of records might contain responsive items."  *Id.* at 32.  Other than his own disbelief that DEA stores surveillance records where it says it stores surveillance records, Byrnes has not offered any reason for the court to think that there are other stones for the agency to turn over.  *Cf. Oglesby*, 920 F.2d at 68 (indicating agency could have met its obligations if it had "explain[ed] in its affidavit that no other record system was likely to produce responsive documents").  Accordingly, the Department of Justice is entitled to summary judgment on its search for surveillance records related to Byrnes, as requested in paragraph 3.

Byrnes makes one more related argument regarding DEA's search for records showing that he was subject to surveillance:  he argues that the supplemental Hertel declaration inadequately

---

[5] Byrnes also argues that the Department of Justice waived any argument that its decision not to search for records of DEA surveillance of his clients was reasonable because the agency addressed the issue only in a footnote in its opening brief.  Pl.'s Br. at 21–22.  The court does not decide whether the Department waived this argument given its decision that the agency's search for surveillance records related to Byrnes's clients was inadequate and the agency's more fulsome discussion of this issue in its reply, *see* Def.'s Reply at 21–22.

describes DEA's "FOIA search of the CC files for the first part of paragraph 3." Pl.'s Reply at 14. This argument refers to a single sentence in the supplemental Hertel declaration that "CC searched its files for any record reflecting DEA surveillance or investigation of Mr. Byrnes and located no records." Second Hertel Decl. ¶ 10. It is unclear to the court whether this sentence refers to a search that CC conducted above and beyond the NADDIS search. If it does, then the declaration is plainly deficient as to this search, as it does not "set[] forth the search terms and the type of search performed." *Oglesby*, 920 F.2d at 68; *see also Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (rejecting affidavit that "identifie[d] the three directorates that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted in each component" (cleaned up)). But it is equally possible that Hertel merely meant that "CC searched its files" by conducting the NADDIS search. Because the court cannot determine whether an additional search of CC files was conducted, the Department of Justice is ordered to produce a supplemental declaration stating either that it searched NADDIS and no additional search was conducted or describing the search method and terms for the search of CC files in response to Byrnes's request in paragraph 3.

> 2.    *Surveillance Records Pertaining to Byrnes's Clients*

Byrnes argues that DEA was required to search for surveillance records related to the clients that were listed in paragraph 6 of his FOIA request and the clients whose names DEA "encountered . . . during its search for responsive documents." Pl.'s Br. at 22–24. The Department of Justice responds that, because Byrnes's request in paragraph 3 was not limited to the clients listed in paragraph 6, it had no obligation to search for records related to those clients. *See* Def.'s Reply at 6–7.

"The agency is not required to speculate about potential leads" or "look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996). It cannot, however, "ignore what it cannot help but know." *Id.* Thus, "when a request seeks all agency records on a given subject, the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore." *Whitaker v. CIA*, 31 F. Supp. 3d 23 (D.D.C. 2014) (quoting *Cooper v. Dep't of Just.*, No. 03-5172, 2004 WL 895748, at *2 (D.C. Cir. Apr. 23, 2004) (per curiam)); *see also Kowalczyk*, 73 F.3d at 389 (requiring an agency to pursue "a lead that is both clear and certain"). Courts in this Circuit have found a "clear and certain" lead "[w]here specific records are referenced in agency documents." *Whitaker*, 31 F. Supp. 3d at 44 (alterations omitted)

DEA could not in good faith ignore that Byrnes provided the names of sixteen of his clients in paragraph 6 of his request. *See* Pl.'s Req. at 3–4. Byrnes's FOIA request repeatedly referred to the list of "USERRA Complainants" in paragraph 6 as "represented by Mr. Byrnes." *Id.* at 3; *see also id.* at 1 (referring to "Kevin Byrnes" as "the personal representative for the persons listed below in paragraph 6"); *id.* at 2 (referring to Byrnes's "actions as counsel for the individuals that are listed in paragraph 6"). It was therefore obvious that the names in paragraph 6 were names of Byrnes's clients. Further, to the extent the agency came across records identifying clients in its searches pursuant to paragraphs 1 and 2, the agency was required "to account for leads that emerge[d] during its inquiry," *Campbell v. U.S. Dep't of Just.*, 164 F.3d at 20, 28 (D.C. Cir. 1998). The agency's blanket refusal to search for records related to any of Byrnes's clients indicates that it failed to follow patently obvious leads, and Byrnes is entitled to summary judgment that DEA's search in response to paragraph 3 as it pertains to his clients was unreasonable.

C.    **Requests in Paragraphs 4 and 5**

In paragraph 4 of his FOIA request, Byrnes sought any communications from any DEA "employee[] or agent[] that seek[] to monitor or deter any employee of the Agency from selecting or maintaining Mr. Byrnes as a legal representative or which in any way seek[] to disparage Mr. Byrnes to any third party."  Pl.'s Req. at 3.  And in paragraph 5, Byrnes sought communications by "any employee or agent of [DEA] that claim[] that Mr. Byrnes violated any professional code of legal ethics or which respond[] to any claim of any ethical violation made against an employee or agent of [DEA], that mention[] the conduct or motives of Mr. Byrnes."  *Id.*  DEA explained that it declined to search for records in response to these requests because both requests would have required "DEA to search the records of every employee, without a time limitation, because it ha[d] no way of knowing which employees" would have responsive records.  First Hertel Decl. ¶¶ 24–25.

A FOIA request must reasonably describe the records sought.  *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  As such, the requester must "frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome."  *Leopold v. Dep't of Just.*, 301 F. Supp. 3d 13, 23 (D.D.C. 2018) (internal quotation marks omitted).  The court will not require an agency to "perform searches which are not compatible with [the agency's] document retrieval systems" or to "respond to overly broad and unreasonably burdensome requests."  *Id.*  (internal quotation marks omitted).  Thus, "[t]he law is clear that FOIA does not provide requesters with a right to demand an all-encompassing fishing expedition of files in every office within an agency."  *Cause of Action v. IRS*, 253 F. Supp. 3d 149, 160 (D.D.C. 2017) (internal quotation marks omitted).

Byrnes essentially argues that his request is not overly burdensome and DEA's declarant has misrepresented the burden imposed on the agency.  *See* Pl.'s Reply at 18–20.  He submitted

21

the affidavit of Darek Kitlinski, a former Supervisory Special Agent Criminal Investigator assigned to the Technical Operations Group at DEA's San Diego Field Division.  Pl.'s Mot., Decl. of Darek J. Kitlinski, ECF No. 27-3 [hereinafter Kitlinski Decl.], ¶ 1.  According to Kitlinski, DEA's email services have been stored to Office 365 since 2019, and "[a] single query could be run across the entire Office 365 platform, and would take seconds."  *Id.* ¶¶ 4–5.  As to emails stored to "legacy email systems," he avers that all such systems "were centralized to a few servers [at] a datacenter in Northern Virginia," and "[i]t is estimated that results from a query upon the legacy email system would take only a few minutes, at most."  *Id.* ¶ 7.  Hertel, DEA's declarant, disagrees.  As she explains it, while it is possible to conduct an automated search of electronic files such as emails, the agency would nonetheless require "the name of the email custodian because the emails have to be converted into the proper format required by the search tool."  Second Hertel Decl. ¶ 12.  Because Byrnes's requests referred to "any employee or agent," DEA would have "to search the email accounts and network drives of approximately 15,000 DEA employees," and even "[a]n automated search of all DEA employee accounts would likely have taken months" because DEA would need to manually review each record identified in an automated search to determine whether it was responsive to Byrnes's requests.  *Id.* ¶ 13.

In the parties' battle of affidavits, the Hertel declaration is entitled to the greatest weight. The court cannot take Kitlinski's declaration as probative of DEA's current email technology because Kitlinski has not worked for DEA since 2015.  Kitlinski Decl. ¶ 1.  Even then, his expertise within DEA is limited to the San Diego Field Division to which he was assigned.  *Id.*  His declaration provides the court with no basis to infer that he has knowledge of DEA's systemwide email storage, let alone knowledge of DEA's systemwide email storage as of 2021.  Hertel, in contrast, is the current "Unit Chief of the Legal and External Affairs Unit, Freedom of Information

22

and Privacy Act Section, of the United States Department of Justice[,] . . . Drug Enforcement Administration." First Hertel Decl. ¶ 1.  Her duties in that position have made her "knowledgeable about the policies and practices of the DEA related to search, process, and disclosure of DEA information under the FOIA and the [Privacy Act]."  *Id.* ¶ 2.  Hertel's declaration provides a clear basis for her knowledge of the capabilities of DEA's systems, and on balance, the court concludes that the Hertel declarations are the definitive statement on DEA's processing capabilities.

Accepting the Hertel declarations' characterization of DEA's search capabilities as true, the court concludes that DEA properly declined to search for records responsive to the requests in paragraphs four and five.  Byrnes has requested information pertaining to *any* agent or employee of DEA without specifying what types of employees might have responsive records.  *See* Pl.'s Req. at 3 (requesting "*any* communication by the Drug Enforcement Administration or its employees or agents" and "*any* communication made by *any* employee or agent of the Drug Enforcement Administration" (emphasis added)).  Requests that do "not specify any particular DEA office to be searched, type of record, or author, recipient, or a date of any record that would be responsive, and, further, do[] not specify any time period or date when any record may have been created" do not reasonably describe the records sought, and DEA was not required to search for such records.  *Latham v. U.S. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (cleaned up); *see also Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) ("[C]ourts have found that FOIA requests for *all* documents concerning a requester are too broad.").  Further, even if DEA were able to winnow the custodians who might have responsive records, the requests in paragraphs 4 and 5 would fail to satisfy the "linchpin" requirement of a FOIA request that the agency be "able to determine precisely what records are being requested."  *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (alteration omitted) (internal quotation marks omitted).  For example, whether a

particular record constitutes an attempt to "deter an[] employee of the Agency from selecting or maintaining Mr. Byrnes as a legal representative" or whether a record seeks "to disparage Mr. Byrnes," Pl.'s Req. at 3, depends on subjective value judgments about what would constitute "deterrence" or "disparagement," and such requests are not susceptible to any standardized review or search. *See Landmark Legal Found. v. Dep't of Just.*, 211 F. Supp. 3d 311, 320 (D.D.C. 2016) (finding request impermissibly broad where "a search would not only be difficult to formulate, but would also likely not uncover responsive records" because the searcher could not employ "a concrete and specific search term"). Given the scope of the requests in paragraphs 4 and 5 and the difficulty inherent in searching for records responsive to them, the court agrees with the Department that these requests are impermissibly broad.

Byrnes also argues that DEA should have been required to propose its own time limitation for the requests in paragraphs 4 and 5. Pl.'s Br. at 26–27. But, based on the Hertel declarations, simply imposing a time limitation would not cure the defects associated with Byrnes's request because DEA would still need to search 15,000 email accounts across 400 servers. Hertel Decl. ¶ 7. The court therefore declines to require DEA to correct Byrnes's requests in paragraphs 4 and 5 for him.

### D.    Exemption 6

Finally, DEA withheld "the names and identities of current DEA and DOJ employees, and third parties," as well as "personal identifying information such as individual phone numbers and email addresses" pursuant to FOIA Exemption 6. First Hertel Decl. ¶ 34. Byrnes accepts most of these redactions but argues that DEA has not justified its withholding of attorney names under Exemption 6. *See* Pl.'s Br. at 12–17.

24

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Byrnes does not dispute that DEA's withholding of attorney names falls within the Exemption 6 framework.  The court must therefore "determine whether . . . disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  "If no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure."  *Id*.  If, however, the agency demonstrates that "a substantial privacy interest is at stake, then [the court] must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy."  *Id*.

There is no per se rule that disclosure of the names of government employees is "inherently and always a significant threat to the privacy of those listed."  *Id*. at 877.  Rather, whether disclosure would constitute "a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."  *Id*.  Courts in this Circuit have interpreted this precedent to mean that "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'"  *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (quoting *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980)).  But that standard "does not authorize a 'blanket exemption' for the names of all government employees in all records."  *Id*. (quoting *Baez v. Dep't of Just.*, 647 F.2d 1328, 1338 (D.C. Cir. 1980)).  Rather, courts have authorized withholding of government employees' names where the agency has

articulated precise concerns with disclosing the information, such as increasing "already intense public scrutiny of the Keystone XL Pipeline," *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 47 (D.D.C. 2012), or exposing employees "[a]s advocates for security measures that may be unpopular" in a context in which naming employees could have "substantial security implications," *Elec. Privacy Info. Ctr.*, 348 F. Supp. 2d at 117.  In contrast, "conclusory allegations as to the existence of a substantial privacy interest," such as an "*ipse dixit* statement . . . that the release of such information 'would result in a clearly [un]warranted violation of privacy'" will not suffice.  *AquAlliance v. U.S. Bureau of Reclamation*, 139 F. Supp. 3d 203, 213 (D.D.C. 2015) (alteration omitted).

DEA's primary explanation for withholding the names of attorneys is that "[t]he attorneys provide legal advice and advocacy for purposes of supporting a law enforcement mission, which includes a component of national security."  Second Hertel Decl. ¶ 14.  DEA concedes that the records at issue "were not collected or compiled as part of a law enforcement activity," but contends that withholding is nevertheless appropriate because "the attorneys advise on a variety of legal matters, including law enforcement activities."  *Id.*  Thus, DEA says, "[b]y virtue of their employment with DEA and the nature of their work, the attorneys would be targets for harassment, intimidation, undue public attention, and physical attacks from criminal organizations."  *Id.*  These statements, however, are little more than conclusory allegations that disclosure of the attorneys' mere association with DEA will subject them to negative consequences.  DEA does not articulate, for example, what aspect of a DEA attorney's job might make her a target for harassment or why a DEA attorney is at greater risk than any other government attorney.  "Such a sparse showing is manifestly insufficient to permit the [agency] to clear the summary judgment hurdle."  *AquAlliance*, 139 F. Supp. 3d at 213; *see also Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d

79, 97 (D.D.C. 2015) ("[T]he Court will certainly not accept the suggestion that the remote possibility of harassment means that every disclosure of a name implicates a significant privacy interest."). DEA has therefore not made a "particularly strong" showing of a privacy interest; nonetheless, because the demonstration of a privacy interest is "not very demanding" at this initial step, the court will balance this intrusion on the attorneys' privacy interests with the public interest. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008).

"[T]he only relevant public interest in disclosure to be weighed is the extent to which the disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *AquAlliance*, 139 F. Supp. 3d at 213 (cleaned up) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)). Byrnes argues that because DEA is "a federal employer," its "mission includes the protection of civil rights, the fair and appropriate treatment of its employees and compliance with federal law on the Privacy Act and FOIA." Pl.'s Reply at 23. Even if this court were to assume that DEA, an agency tasked with enforcing drug laws, also has a broad mission to "protect[] . . . civil rights" and fairly treat its employees, Byrnes fails to explain how disclosing the names of DEA attorneys would "contribute significantly"—or at all—to that goal. Likewise, Byrnes has made a meager showing of how disclosure of the attorneys' names would "contribute significantly" to the public's understanding of DEA's compliance with FOIA. He points to *Kleinert*, where Judge Bates noted that removing redactions to the names of Bureau of Land Management employees "likely would shed some light on the agency's performance of its duties" because the redactions "obfuscate[d] who sent what to whom, making it difficult to analyze the agency's behavior toward Kleinert, including its scope." 132 F. Supp. 3d at 97. The court accepts that Byrnes might be able to make out some minor public interest in disclosure like the public

27

interest in *Kleinert*.  But more importantly, the court is cognizant that, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act."  *Morley*, 508 F.3d at 1127 (quoting *Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982)).  Thus, where, as here, both the privacy interests and the public interests implicated by the disputed information are minimal, the law breaks in favor of disclosure. Accordingly, the court grants summary judgment to Byrnes and orders DEA to disclose the names of the attorneys that it withheld under Exemption 6.

## V.    CONCLUSION

For the foregoing reasons, the court grants the Department of Justice's Motion for Summary Judgment as to its search for records of surveillance of Byrnes in paragraph 3 and as to its decision not to search for records responsive to Byrnes's requests in paragraph 4 and 5.  The Department of Justice's Motion is otherwise denied.  The court grants Byrnes's Motion for Summary Judgment as to the Department of Justice's (1) searches of former CC employees' documents in response to Byrnes's requests in paragraphs 1(g), 1(h), 1(i), and 1(m); (2) search for records responsive to Byrnes's request in paragraph 1(j); (3) failure to search for records of surveillance of Byrnes's clients, as requested in paragraph 3; and (4) withholding of attorney names.  Byrnes's Motion is otherwise denied.  The court further orders the Department of Justice to provide a supplemental declaration identifying: (1) the custodians whose records were searched, (2) the search terms used, (3) whether the entirety of Sandra Stevens's email communications were searched, and (4) whether CC conducted a search for surveillance records of Byrnes beyond the NADDIS search.

Dated:  September 29, 2021

Amit P. Mehta
United States District Court Judge

28